IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DESTINY WILLIAMS,
 Plaintiff,

    v.

JAKE FRUGE, JR., *et al.*,
 Defendants.

Civil Action No.
1:25-cv-01298-SDG

## OPINION AND ORDER

This case concerns the intersection of veil piercing and personal jurisdiction. Having failed to properly serve the limited liability company she named as a defendant,[1] Plaintiff Destiny Williams finds herself litigating claims against Defendant Jake Fruge, Jr. only, and here lies her fundamental issue: The only contacts with Georgia that might give rise to the Court's exercise of personal jurisdiction over this case are contacts that the company made with Georgia. Fruge did not have any contacts with Georgia in his personal capacity. As such, Williams asks the Court to pierce the limited liability veil and attribute company contacts to Fruge for purposes of exercising personal jurisdiction over and imposing liability on him. But because Williams has not put forward factual allegations demonstrating that Fruge treated the companies as his alter ego, the Court will not

---

[1] Williams did not serve Champion E-Com, LLC within the 90 days specified under the Federal Rules, nor did she request waiver of service. As such, Champion E-Com is **DISMISSED without prejudice**. Fed. R. Civ. P. 4 (m).

1

pierce the veil for jurisdictional purposes. Lacking sufficient contacts with Georgia himself, Fruge is not subject to the personal jurisdiction of this Court. Accordingly, Fruge's motion to dismiss [ECF 13] is **GRANTED**.

## I.      Background

The Court's description of the facts is based on the well-pleaded allegations of the Amended Complaint. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

On January 11, 2023, Williams attended a live webinar to learn about an online business opportunity presented by Champion E-Com.[2] The webinar was led by Fruge who, at the time, introduced himself as the owner and CEO of Champion E-Com.[3] Though Williams alleges Fruge "marketed and sold" his business "throughout the United States, including Georgia," she never alleges how *she* learned of Champion E-Com or Fruge.[4] Nevertheless, Williams attended this webinar from her home in Fulton County, Georgia and listened to Fruge

---

[2]    ECF 19, ¶¶ 10–15.

[3]    *Id.* ¶¶ 12–13.

[4]    *Id.* ¶ 10.

promote the business opportunity.[5] Fruge pitched webinar attendees, like Williams, on a "hands-off" Amazon store of their own that would generate ever increasing monthly sales, ranging from approximately $5,000 in the first month, to $20,000 by month three, to about $50,000 in monthly sales by month six.[6] "All aspects" of the Amazon store setup and management would be handled by Champion E-Com; all that was required of interested webinar attendees was a $45,000 investment to get their storefront and Champion E-Com's services started.[7]

Based "largely" on Fruge's representations during the webinar, Williams decided to participate.[8] On January 31, 2023, Williams signed up, and on February 1, 2023, she paid the $45,000 start-up fee.[9] Williams signed an agreement with Champion E-com (the Agreement),[10] whereby Champion E-Com promised to

---

[5]    *Id.* ¶ 12.

[6]    *Id.* ¶ 15.

[7]    *Id.* ¶¶ 13–14, ¶¶ 35–39.

[8]    *Id.* ¶ 21.

[9]    *Id.* ¶¶ 21–22.

[10]   Williams emphasizes how the Agreement was with "Champion Ecom [sic], **LLP**" (emphasis added) despite allegedly making her payment to Champion E-Com, **LLC**. *Id.* ¶ 23–30. Williams alleges that the LLC did not exist until April 14, 2023, when Champion E-Com, LLP was converted to Champion E-Com, LLC, a Texas limited liability company. *Id.* ¶ 31. That Champion E-Com was first an LLP before it was converted to an LLC has no bearing on the jurisdictional issue at the heart of this motion.

manage the store for two years, handling matters such as initial setup, product research, uploading inventory, processing orders, handling returns, and analyzing store metrics, among others.[11] Williams alleges that of the multiple services Champion E-Com promised to do for customers like her, the only services that it actually carried out were registering her store as a Georgia LLC and opening an Amazon Store account.[12]

Williams also experienced undelivered promises when she attempted to purchase inventory. Between May 3 and June 1, 2023, Williams charged her credit card three times to purchase "inventory"—she does not allege from where or for what—for a total of $3,594.33.[13] However, that inventory never showed up in her Amazon store, and Williams was unable to make a sale.[14]

Also around this time, Champion E-Com assigned its agreements with all 500 of its customers, including the Agreement it had with Williams, to a separate

---

[11]  *Id.* ¶ 35. *See also* ECF 5-1. The Court can consider documents attached to a motion to dismiss without converting the motion to one for summary judgment if the documents are central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Here, the Agreement is central to William's claims and neither party disputes its authenticity.

[12]  ECF 19, ¶ 30.

[13]  *Id.* ¶ 58.

[14]  *Id.* ¶ 59.

entity.[15] On June 2, 2023, Champion E-Com employee Dallas Middleton emailed Williams to inform her that her Amazon storefront was being "transferred" to a new company, Digital Guidance, because Champion E-Com assigned all responsibilities and obligations under the Agreement to Digital Guidance.[16] Digital Guidance required Williams to begin paying management fees, which Williams felt was contrary to the Agreement.[17]

Come September, things still were not looking good for Williams and her Amazon store. The "inventory" she purchased back in May and June had never shown up, and on September 13, 2023, Williams finally got Fruge on the phone to talk about it, though she does not allege who initiated the call.[18] Fruge told Williams that all her inventory had been "lost," but he promised to reimburse her so long as she signed a release form.[19] She signed the release form and received a full refund the next day.[20] On September 21, Williams paid Digital Guidance $5,000 for "brand approval," which would allegedly allow her to sell brand-name products by companies like Nike and Amazon, but she never saw anything come

---

15    *Id.* ¶¶ 47–49, 81.

16    *Id.* ¶¶ 47–49.

17    *Id.* ¶ 53.

18    *Id.* ¶¶ 58–59.

19    *Id.* ¶¶ 60–63.

20    *Id.* ¶¶ 64–65.

of this. Eventually, Williams disputed the $5,000 charge with her credit card company.[21] Williams had still not made a single sale from her Amazon store.[22]

On January 2, 2024, Fruge called Williams, identifying himself as CEO of Champion E-Com, and more or less came clean.[23] He admitted that his business plan had faced problems since the beginning and was unable to do what he had promised on the webinar.[24] Fruge allegedly told Williams that it would take "about 5 years" to get to the point where customers would actually make money from their investment in these Amazon storefronts.[25] However, he disclaimed any ability to fix the investors' issues because the contracts had been assigned to Digital Guidance.[26] Soon after, Fruge stopped communicating with Williams, and she did not hear from another Champion E-Com employee.[27]

Throughout this time, Williams never met Fruge in person. All interactions Williams had with Fruge, Champion E-Com, and employees of Champion E-Com were either virtual — like the webinar — or by email or phone. Fruge is a citizen and

---

[21]   *Id.* ¶¶ 70–72.

[22]   *Id.* ¶¶ 42–44, 56.

[23]   *Id.* ¶¶ 75–79.

[24]   *Id.*

[25]   *Id.* ¶ 79.

[26]   *Id.* ¶ 82.

[27]   *Id.* ¶ 86.

resident of Texas,[28] and Williams never alleges that Fruge even once stepped into Georgia.[29]

Nevertheless, Williams chose Georgia as the forum for this lawsuit. She originally filed in Fulton County Superior Court, naming Fruge; Champion E-Com, LLC; and Champion E-Com LLP as defendants.[30] On March 6, 2025, the Superior Court dismissed without prejudice Defendants Champion E-Com, LLC and Champion E-Com LLP because Williams did not timely serve them with process.[31] Shortly thereafter, Fruge removed the case to this Court,[32] and he moved to dismiss the complaint on March 18.[33] On April 9, Williams filed her First Amended Complaint (FAC),[34] which she was allowed to refile with minor corrections on September 26.[35] Williams only named Fruge and Champion E-Com, LLC in the FAC.[36]

---

[28]   ECF 19, ¶ 3; ECF 13, at 2, 8.

[29]   ECF 13, at 8–9.

[30]   ECF 1-1, at 3.

[31]   ECF 2.

[32]   ECF 1.

[33]   ECF 4.

[34]   ECF 10.

[35]   ECFs 18, 19.

[36]   ECF 19, at 1.

In total, Williams asserts five causes of action: (1) deceit or fraudulent misrepresentation against Fruge;[37] (2) fraudulent inducement against Fruge;[38] (3) violation of the Georgia Fair Business Practices Act (FBPA) against Fruge and Champion E-Com;[39] (4) violation of the Georgia RICO Act against Fruge and Champion E-Com;[40] and (5) breach of contract against Fruge and Champion E-Com.[41] She also seeks punitive damages, attorney's fees, and costs.[42] Fruge again moves to dismiss, arguing that this Court lacks personal jurisdiction over him and that the FAC fails to state a claim.[43] As to Champion E-Com, LLC, Williams never filed proof with this Court that she served it with process and it has not otherwise appeared in this lawsuit; accordingly, Williams' claims against Champion E-Com are **dismissed without prejudice**. Fed R. Civ. P. 4(m). The only Defendant remaining is Fruge.

---

[37]  *Id.* ¶¶ 94–102.

[38]  *Id.* ¶¶ 103–08.

[39]  *Id.* ¶¶ 109–18.

[40]  *Id.* ¶¶ 119–28.

[41]  *Id.* ¶¶ 129–38.

[42]  *Id.* ¶¶ 139–44.

[43]  ECF 13.

## II.   Subject Matter Jurisdiction

Before turning to Fruge's motion to dismiss, the Court will first address its subject matter jurisdiction over this case. On its face, the FAC adequately alleges the existence of diversity jurisdiction: Williams is a citizen of Georgia,[44] Fruge is a citizen of Texas,[45] and the amount in controversy exceeds $75,000.[46] 28 U.S.C. § 1332(a). While Williams only claims $45,000 in actual damages, she also requests treble damages, punitive damages, and attorney's fees in connection with her Georgia RICO claim, which would easily exceed the $75,000 threshold. *See Edwards v. Solomon & Solomon PC*, 2022 WL 19410502, at *2 (N.D. Ga. Dec. 9, 2022) (citing *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987)) (noting that treble and punitive damages must be considered when determining the amount in controversy). Finally, while the Court does not know the citizenship of Champion E-Com, LLC,[47] that does not defeat complete diversity because Champion E-Com has been dismissed from this action.

---

[44]   ECF 19, ¶ 1.

[45]   *Id.* ¶ 2.

[46]   *Id.* ¶ 4.

[47]   Williams suggests that Champion E-Com, LLC is a Texas citizen solely because it is an LLC registered in Texas. ECF 19, ¶ 3. This is insufficient—the citizenship of an LLC is determined by the citizenships of each of its members and submembers, which Williams has not alleged. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).

### III.   Legal Standards

Fruge moves to dismiss the FAC pursuant to Rule 12(b)(2), alleging that the Court lacks personal jurisdiction over him, and, in the alternative, he moves to dismiss under Rule 12(b)(6), arguing that the FAC fails to state a claim upon which relief can be granted. Because the Court lacks personal jurisdiction over Fruge, it will not reach the 12(b)(6) motion.

For a court to render a valid judgment against a party, it must have personal jurisdiction. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Federal courts have such jurisdiction where its exercise is (1) authorized under the state's long-arm statute and (2) consistent with due process. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010). On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), it is the plaintiff's burden to establish in the complaint a prima facie case for the exercise of jurisdiction—that is, to present a case that would withstand a motion for a directed verdict. *Id.*; *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990). The Court treats the jurisdictional allegations in the complaint that are not controverted by the defendant's evidence as true. *Madara*, 916 F.2d at 1514. Here, Fruge has not submitted any evidence challenging William's jurisdictional allegations. Accordingly, the Court evaluates whether the FAC states a prima facie case for the exercise of personal jurisdiction over Fruge.

10

## IV.    Discussion

Before turning to the personal jurisdiction analysis, the Court must first determine a preliminary matter on piercing the limited liability veil.

### A.    Champion E-Com's contacts with Georgia cannot be imputed to Fruge for jurisdictional purposes.

Williams seeks to impute Champion E-Com's contacts with Georgia to Fruge for jurisdictional and liability purposes. Indeed, the only way the Court can exercise personal jurisdiction over Fruge is if Champion E-Com's contacts are imputed to him—Fruge himself lacks sufficient contacts with Georgia. The Eleventh Circuit has held that "jurisdictional veil piercing" is consistent with constitutional due process because "when a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) (considering the defendant's contacts with Georgia). Georgia courts likewise recognize such jurisdictional veil piercing and will treat the entity as an individual's alter ego[48] *if* a plaintiff presents evidence that the entity "was a sham or that it was used to defeat a public convenience, to justify wrong, protect

---

[48]   Georgia courts do not appear to distinguish between "piercing the corporate veil," which suggests one entity is vicariously liable for the debts of another entity by virtue of the exercise of control, and "alter ego," which implies that two or more entities are one and the same and should be treated as such for purposes of imposing liability. For purposes of this case, it is a distinction without a difference.

11

fraud, defend crime, or any other reason which in equity and good conscience would justify the disregard" of the limited liability entities. *Yukon Partners, Inc. v. Lodge Keeper Grp., Inc.*, 258 Ga. App. 1, 7 (2002).

While Champion E-Com has only existed as an LLP and an LLC (not as a corporation), the same general principles for piercing the veil of a corporation apply to these limited liability forms. *See generally Washington St. Apartments, LLC v. Fredd*, 375 Ga. App. 815, 819–20 (2025) (discussing corporate veil piercing principles in the context of an LLC). That corporations are legal entities distinct from their shareholders, directors, officers, and employees is a foundational principle of corporate law. *Dep't of Transp. v. McMeans*, 294 Ga. 436, 437 (2014). This is no less true when a limited liability entity is wholly owned by a single individual. *Id.* Nor is this principle "altered by the fact that the sole owner uses and controls the corporation to promote the owner's ends." *Id.* Because limited liability exists to "shiel[d] individual shareholders and members from personal liability for the acts of the [entity]," courts should exercise "great caution . . . in disregarding the corporate entity." *Id.*

Even so, Georgia courts will disregard the limited liability form and pierce its veil if "a corporation is a mere alter ego or business conduit of a person" and the limited liability form was "used as a subterfuge so that to observe it would work an injustice." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005) (citation

12

omitted). To pierce the limited liability veil, the plaintiff must show that the members "made [the entity] a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist." *Id.* (citation omitted). This generally requires the plaintiff to adduce evidence of fraud, abuse of the corporate form, commingling of assets, or corporate insolvency at the time of the transaction. *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014) (citing *Amason v. Whitehead*, 186 Ga. App. 320, 322 (1988)).

The alter ego claim is an equitable one, and it cannot be sustained unless there is an inadequate remedy at law. *Baillie Lumber Co.*, 279 Ga. at 290. Thus, insolvency, "in the sense that there are insufficient corporate assets to satisfy the plaintiff's claim" is a "precondition to a plaintiff's piercing the corporate veil and holding individual shareholders liable on a corporate claim." *Johnson v. Lipton*, 254 Ga. 326, 327 (1985).

To that end, Williams fails to sufficiently allege insolvency, despite it being a precondition to piercing the limited liability veil. Williams states that (1) "on information and belief, Champion E-Com, LLC was deliberately or grossly undercapitalized from inception, unable to meet foreseeable business liabilities"; (2) that "Champion E-Com, LLC was never adequately capitalized, rendering [her] recourse futile without piercing"; and that (3) "Fruge intentionally kept Champion

E-Com, LLC undercapitalized as a mere shell to evade personal liability."[49] These bald assertions, devoid of facts, do not allow the Court to determine whether Champion E-Com is insolvent in the alter ego sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 578 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("[A] formulaic recitation of the elements . . . will not do.").

Williams has also failed to allege abuse of the limited liability form. Because the Court could not pierce the corporate veil as to liability without the sufficient factual showings, the Court likewise cannot pierce the limited liability veil for personal jurisdiction. *See Bibby*, 987 F.3d at 1356. As such, the Court will not impute Champion E-Com's contacts to Fruge for jurisdictional purposes.

### B. The Court lacks personal jurisdiction over Fruge under Georgia's long-arm statute.

Turning to the personal jurisdiction inquiry over Fruge, the Court begins with Georgia's long-arm statute. The statute confers personal jurisdiction over non-resident defendants under six circumstances, three of which Williams argues apply to Fruge. O.C.G.A. § 9-10-91.  Relevant here, the statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . .  as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

---

[49]    ECF 19, ¶¶ 135–37.

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91. The Court need only find one subsection met for its exercise of personal jurisdiction to be proper under the long-arm statute.

### 1. Fruge has not transacted any business within Georgia.

Under the first subsection of Georgia's long-arm statute, the Court may exercise personal jurisdiction over a nonresident defendant if, "in person or through an agent" the defendant "transacts any business within" Georgia. O.C.G.A. § 9-10-91(1); *Diamond Crystal*, 593 F.3d at 1264. The literal language of the provision is broad: it gives courts "the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State." *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Ia.*, 279 Ga. 672, 675 (2005). While in some cases, applying the literal meaning of § 9-10-91(1) would "expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process," *id.*, satisfying subsection one of the long-arm statute is still a prerequisite to a personal jurisdiction determination; the Eleventh

15

Circuit has made clear that courts cannot collapse subsection one and constitutional due process into the same inquiry. *Diamond Crystal*, 593 F.3d at 1261.

Proving a nonresident defendant has transacted business within Georgia does not require the defendant's physical presence in Georgia, *Innovative Clinical*, 279 Ga. at 675, and, indeed, the statute allows the "assertion of long-arm jurisdiction over nonresident defendants . . . based upon business conducted through postal, telephonic, and Internet contacts." *Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC*, 316 Ga. App. 471, 475–76 (2012). But meeting subsection one of the long-arm statute "expressly depends on the actual transaction of business — the doing of some act or consummation of some transaction — by the defendant in the state." *Diamond Crystal*, 593 F.3d at 1260 (citing *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 517 (2006)).

The Court views Williams' factual allegations as consisting of three bases for how Fruge transacted business in Georgia. First, Williams alleges that she, a Georgia resident, came across marketing for Champion E-Com that prompted her to attend, from Georgia, a live webinar about the business. Second, she alleges that Fruge's company — not Fruge — signed a contract with her, a Georgia resident. And third, she alleges that she communicated with Fruge and a Champion E-Com employee by phone or email on three occasions. Because the Court will not impute Champion E-Com's contacts to Fruge, the contacts giving rise to personal

16

jurisdiction must be the acts of Fruge and not the company or its employees. For this reason, the contract between Champion E-Com and Williams, as well as the email sent to Williams by a Champion E-Com employee, are insufficient to establish contacts by Fruge. That leaves only the webinar, the webinar marketing, and the two phone calls between Williams and Fruge.

Both the webinar and Fruge's marketing of the webinar do not show that he transacted business in Georgia. While Williams alleges that Fruge was "the main promoter and sales person [sic] of the program,"[50] she does not allege that the marketing was in a Georgia-specific channel, nor does she allege that it was even targeted at Georgia residents in a particular way. National marketing without any Georgia-specific focus is not the "actual transaction of business" in Georgia. *Diamond Crystal*, 593 F.3d at 1260; *see also Perrigo Co. v. Merial Ltd.*, 215 F. Supp. 3d 1329, 1341–42 (N.D. Ga. 2016) (deeming national advertising and even a blog post written by a Georgia resident and sponsored by the defendant insufficient to show that the defendant transacted business within Georgia). For similar reasons, Fruge speaking during an online, nationally-targeted webinar—essentially live

---

[50] The Court considers actions taken by Fruge in his capacity as CEO of Champion E-Com because Georgia has rejected any sort of "fiduciary shield" rule that would immunize corporate officers from personal jurisdiction based solely upon acts taken in their capacity as corporate officers. *See Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011).

advertising—does not constitute the transaction of business in Georgia, even if a Georgia resident was in (virtual) attendance. *C.f. Pascarelli v. Koehler*, 346 Ga. App. 591, 596–97 (2018) (distinguishing Internet advertising, which does not constitute "transacting business," from Internet websites that allow customers to have physical goods sent into Georgia, which does constitute transacting business).

Williams' two phone conversations with Fruge are also insufficient to satisfy § 9-10-91(1). Williams has only alleged that one of the calls (the January 2024 call) was initiated by Fruge. As such, the September 2023 call cannot show that Fruge reached out to Georgia to transact business. *See Cascade Aircraft Mgmt., LLC v. Velazco*, 374 Ga. App. 397, 404 (2025) (finding the defendant did not transact business within Georgia when it "never initiated any contact" with the plaintiff). That hinges the application of § 9-10-91(1) on a single phone call—one that was made after Champion E-Com had assigned its contract with Williams to Digital Guidance. During the phone call, Fruge admitted the shortcomings of the Amazon storefront business model and disclaimed his ability to change the situation because the contracts had been assigned. This solo communication does not constitute the "doing of some act or consummation of some transaction," *Diamond Crystal*, 593 F.3d at 1260, and is therefore insufficient to establish jurisdiction over Fruge under § 9-10-91(1). *C.f. Mem'l Healthcare Grp., Inc. v. Vickers*, 922 S.E.2d 862, 869 (Ga. Ct. App. 2025) (deeming phone calls to previous patient of hospital placed

after care had ended insufficient to satisfy § 9-10-91(1)); *see also Perrigo*, 215 F. Supp. 3d at 1340–41 (deeming two out-of-state phone calls insufficient to show defendants "did 'some act' or consummated 'some transaction'").

### 2.     Fruge has not committed a tort within Georgia.

Georgia's long-arm statute also permits the Court to exercise personal jurisdiction over a non-resident defendant if the defendant "commits a tortious act or omission within" Georgia. O.C.G.A. § 9-10-91(2). Williams brings tort claims for fraudulent misrepresentation and fraudulent inducement, as well as claims under Georgia's FBPA and RICO statutes, which sound in tort. All four claims are based on the same facts: Fruge's alleged misrepresentations during the webinar and subsequent telephone communications. "For purposes of personal jurisdiction under Georgia's long-arm statute, Georgia courts have ruled that—when a defendant uses the telephone or email to contact a Georgia resident—defendant's conduct occurs at the place where defendant speaks into the telephone or types and sends his email." *LABMD, Inc. v. Tiversa, Inc.*, 509 F. App'x 842, 844 (11th Cir. 2013); *see also Anderson v. Deas*, 279 Ga. App. 892, 893–94 (2006) (no personal jurisdiction existed over a defendant who made harassing telephone calls to a Georgia resident from another state); *Huggins v. Boyd*, 304 Ga. App. 563, 565 (2010) (concluding—based on *Anderson*—that no personal jurisdiction existed over a nonresident defendant who emailed Georgia residents). Williams does not allege

19

that Fruge made his misrepresentations from Georgia; as such, Williams has not shown that Fruge committed a tortious act or omission within Georgia.

### 3. Fruge has not engaged in a persistent course of conduct within Georgia.

Lastly, under O.C.G.A. § 9-10-91(3), the Court may exercise personal jurisdiction over a nonresident defendant who commits a tortious injury in Georgia caused by an act or omission outside of Georgia, but it may do so *only if* the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in [Georgia]." The national advertising, webinar, and phone call do not constitute the "'regular,' 'persistent' or 'substantial'" acts necessary to establish jurisdiction under this subsection. *Mem'l Healthcare*, 922 S.E.2d at 869 (citing *Innovative Clinical*, 279 Ga. at 675 n.4).

In short, Williams has failed to allege facts sufficient to show that the exercise of jurisdiction over Fruge would be proper under Georgia's long-arm statute. For this reason alone, the Court lacks personal jurisdiction to hear this case.

### C. The exercise of personal jurisdiction over Fruge would violate constitutional due process.

Even if Williams' allegations were sufficient to satisfy Georgia's long-arm statute, the exercise of personal jurisdiction over Fruge would be improper as a matter of constitutional due process. Due process requires the defendant to have

20

"fair warning" that his activities in the forum may subject him to jurisdiction there. *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Del Valle v. Trivago GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022). This case involves only specific personal jurisdiction, which "depends on an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up). The Eleventh Circuit's due process analysis for such jurisdiction examines whether (1) the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum, (2) the defendant "purposefully availed" himself of the forum, and (3) exercising personal jurisdiction would violate traditional notions of fair play and substantial justice. *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023).

Fundamentally, Fruge cannot be said to have "purposefully availed" himself of Georgia's laws. To satisfy this step of the due process analysis, Williams would have to show that Fruge "deliberately reached out beyond [his] home." *Id.* at 1230 (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)) (cleaned up). But here, Williams is "the only link between [Fruge] and the forum"—Fruge took no deliberate action to avail himself of the benefit of conducting business within Georgia. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Rather, the business he promoted was an entirely online enterprise with a national market; he did not specifically target Georgia customers, he did not conduct

21

meetings in Georgia, nor, as far as the FAC suggests, did he have Georgia customers other than Williams. *C.f. Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013) (finding purposeful availment where defendant had an interactive website advertising in Florida, received orders from multiple Florida residents, and sent multiple shipments of goods into Florida); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (plurality opinion) (considering national advertising without state-specific advertising insufficient to show contact with the forum state). For this reason, the exercise of jurisdiction over Fruge would violate due process.

## V.   Conclusion

Williams has not met her burden of establishing a prima facie case for the Court's exercise of personal jurisdiction over Fruge. Lacking personal jurisdiction, the Court **GRANTS** Fruge's motion to dismiss [ECF 13] and orders that the claims against Fruge be **dismissed without prejudice**. Because it was never served with process, Champion E-Com, LLC is also **dismissed without prejudice**.

The Clerk is directed to **CLOSE** this case.

**SO ORDERED** this 31st day of March, 2026.

_____
Steven D. Grimberg
United States District Judge

22